**In re: Exxon VALDEZ,**

**Larry Powers, Plaintiff—Appellant,**

v.

**Lynn Lincoln Sarko, Administrator of the Exxon Qualified Settlement Fund; Thomas Amodio, Special Master, Defendants—Appellees.**

**In re: Exxon Valdez,**

**Larry Powers, Plaintiff—Appellee,**

v.

**Lynn Lincoln Sarko, Administrator of the Exxon Qualified Settlement Fund, Defendant—Appellant,**

**and**

**Thomas Amodio, Special Master, Defendant.**

**Nos. 07–35636, 07–35690.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 6, 2008.

Filed Aug. 11, 2008.

by 9th Cir. R. 36–3.

Peter R. Ehrhardt, Esquire, Friedman, Rubin & White, Kenai, AK, for Plaintiff–Appellant.

Karmyn Jones, Esquire, David W. Oesting, Esquire, Karmyn Olmstead, Davis Wright Tremaine, LLP, Douglas J. Serdahely, Esquire, Patton Boggs LLP, Lloyd Benton Miller, Esquire, Sonosky, Chambers, Sachse & Miller, Anchorage, AK, Charles L. Miller, Jr., Esquire, Dickstein Shapiro, LLP, Washington, DC, for Defendants–Appellees.

Before: D.W. NELSON, TASHIMA and FISHER, Circuit Judges.

## MEMORANDUM *

Larry Powers ("Powers") and Lynn Lincoln Sarko, the Administrator of the Exxon Qualified Settlement Fund ("EQSF"), bring cross-appeals of the district court's valuation of Powers' claim under the EQSF Tender Plan. We have jurisdiction under 28 U.S.C. § 1291 and we affirm.

 Powers first argues that the district court erred by failing to value his claims for the 1991, 1992 and 1993 fishing seasons, which were related to his lost profits from a lost business contract with

---

\* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

Seafoods for Alaska ("SFA"). The 1991 to 1993 seasons were not "recognized fishing seasons" under the Plan, which allows tender operators to claim "economic losses" only from "seasons in oiled fisheries in which harvest was lost as the result of the oil spill." Although we agree with Powers that his SFA claim is not a claim for damages from lost harvest, his claim is nonetheless a claim for "economic losses." The plain language of the Plan precludes his recovery for economic losses in non-recognized fishing seasons.

Powers also argues that the district court erred in valuing a dock that was to be built and leased to SFA under the SFA contract, before reverting to Powers' ownership. The district court found that Powers' agreement with SFA was that SFA would build a dock facility worth $250,000, and in exchange Powers would forgo rent from SFA for seven years. The district court found that the lost rental value of the dock under the contract was $35,714 per year. There is nothing clearly erroneous about the district court's computation of the dock's value. *See Stephens v. City of Vista,* 994 F.2d 650, 657 (9th Cir.1993). Further, Powers is not entitled to recover the rental value of the dock in non-recognized fishing seasons, because this is also a claim for "economic losses" and is precluded by the Plan.

On cross-appeal, EQSF argues that the district court erred by recognizing Powers' claims for losses from the SFA contract for 1990, 1994 and 1995. The district court found that Powers was a participant in the Upper Cook Inlet drift fishery in 1989 and therefore not subject to the Plan's one-year limitation on tender claims for tender operators who "ceased operations altogether, or were driven out of business, as a result of the spill." The district court did not err in finding that Powers was "ready, willing and able" to pack harvest in the drift fishery in 1989. Further, even if Powers were not a participant in the fishery in 1989, he clearly did not "cease[ ] operations altogether" nor was he "driven out of business" by the spill, as the EQSF acknowledged by recognizing his claims for lost harvest for the 1990, 1994 and 1995 seasons. Therefore, the Plan's one-year limitation on claims would not apply to him.

Powers' appeal, case number 07–35636, is **AFFIRMED.** EQSF's cross-appeal, case number 07–35690, is **AFFIRMED.** Each party shall bear its own costs on appeal.